UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
LING CHEN, on behalf of himself and others                     :
similarly situated,                                            :
                                                               :
                                                               :   **MEMORANDUM DECISION**
                                    Plaintiff,                 :   **AND ORDER**
                                                               :
                   - against -                                 :   19-cv-7313 (BMC)
                                                               :
                                                               :
ASIAN TERRACE RESTAURANT, INC. *et al.*,                       :
                                                               :
                                    Defendants.                :
-------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff brings this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), seeking to represent a collective of similarly situated employees. Plaintiff moves for conditional certification of a collective action under § 216(b) of the FLSA, as well as for a court order directing defendants to turn over employee contact information and for court authorization of plaintiff's proposed notice of pendency. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

As alleged in the complaint and motion papers, defendants are three Asian restaurants that exist as a single enterprise and an individual, Vicki Sue Li, who supervised plaintiff's work and payment.[1] The restaurants are Asian Terrace Restaurant, Inc. ("Bayside location"), Asian Moon of Massapequa Park, Inc. ("Massapequa location"), Asian Moon Restaurant Corp. ("Garden City" location). Plaintiff was employed by defendants as a "fry wok" from November

---

[1] In his motion papers, plaintiff identifies defendant Li as the owner and operator of the restaurants; the complaint does not aver that Li owned the restaurants.

2017 to December 2017 at the Bayside location, and from May 2019 to June 2019 at the Massapequa location.

According to the averments in plaintiff's affidavit as to his own experiences:

- For the relevant period in 2017, plaintiff was regularly scheduled to work 67 hours per week.

- For the relevant period in 2019, at the Massapequa location, plaintiff was regularly scheduled to work 66 hours per week.

- At all relevant times plaintiff was paid a flat rate of $700 per week.

- At no point did plaintiff receive additional pay for hours worked in excess of 40 per week.

- At no point did plaintiff receive "spread of hours" pay for shifts over 10 hours.

- Throughout his employment, plaintiff did not receive pay statements in his native language of Chinese.

Plaintiff further notes in his affidavit that while employed at the Bayside location, a company car would pick him up in Flushing to drive him to work, then drop him off 11-12 hours later, after work. Up to four other employees would ride in the company car with him. Further, while working at the Massapequa location, plaintiff was similarly transported to work in a company shuttle bus with a capacity of 13 people. This shared transportation experience allowed plaintiff to observe defendants' employment practices and interact with fellow employees, during which he learned about their pay rates and work schedules. About these matters, plaintiff's affidavit conveys the following:

- During plaintiff's employment with defendants, he befriended some of the co-workers who were both tipped and non-tipped employees and who also suffered the same practices and policies of defendants, including not being paid overtime or minimum wages for all the hours worked over 40 in a week.

- One employee, "Chinese Chef," worked the same schedule as plaintiff at the Bayside location and told plaintiff that he was also paid $700 a week and that all fry woks received the same pay.

2

- Another employee, "Big Chef Lin," also known as "Lao Da," worked the same schedule as plaintiff and was also paid weekly in cash, although the amount of his pay is unknown to plaintiff.

- At least five other employees at the Bayside location – two chefs, a dishwasher, a deliveryman, and a waitress – worked 6 days a week.

- In 2019, plaintiff again worked with Big Chef Lin/Lao Da, who had been transferred to the Massapequa location, where they were both still compensated at $700 per week as fry woks.

- The fry woks in the Massapequa location asked "Lady Boss" (a/k/a defendant Li) for a raise but were not given one.

- Two Fry Woks left due to the low wages.

- At least three other employees at the Massapequa location – a waitress, a receptionist/cashier, and a packer – worked 6 days a week, and at least two of whom worked over 40 hours a week.

## DISCUSSION

Section 216(b) of the FLSA creates a private right of action for employees to recover unpaid minimum wage and overtime compensation on behalf of themselves and similarly situated employees. Similarly situated employees must opt into the collective action by filing their written consent with the court before they may proceed as plaintiffs. See 29 U.S.C. § 216(b). Thus, district courts have discretion to facilitate a notice process by which potential plaintiffs are informed of an FLSA action that they might join to adjudicate their rights. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).

Consistent with this discretion to facilitate notice, courts in the Second Circuit conduct a two-step process to determine whether to certify a collective action under the FLSA. See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. (internal

quotation marks and citations omitted). This step requires plaintiffs to "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (internal quotation marks and citations omitted). "[T]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Romero v. La Revise Assocs., LLC., 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (internal quotations marks and citations omitted).

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Id. (citing cases).

Plaintiffs' instant motion concerns only the first step of this process. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014).

I. **Conditional Certification**

Plaintiff seeks conditional certification for all non-managerial employees who have worked at defendant restaurants since January 9, 2017. Plaintiff maintains that the members of this proposed collective are all similarly situated as victims of the same policy or plan in violation of the FLSA. Defendants oppose certification, arguing that plaintiff's affidavit lacks the factual showing necessary for conditional certification. I disagree.

4

Defendants overestimate the required showing at this initial stage, where a plaintiff must merely demonstrate that the proposed members of the collective are "similarly situated." Rodolico v. Unisys Corp., 199 F.R.D. 468, 480 (E.D.N.Y. 2001). "Because minimal evidence is available at this stage, this determination is made using a relatively lenient evidentiary standard." McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (*colatus*[2]). For example, courts in this Circuit have routinely found that such a modest factual showing can be established "based solely on the personal observations of one plaintiff's affidavit," see Hernandez v. Bare Burger Dio Inc., 12-cv-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013), and have held that hearsay may be relied upon to support conditional certification, see Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59 (E.D.N.Y. 2011).

Here, plaintiff's affidavit sufficiently establishes, for the purposes of this motion, that he and several other non-managerial employees were not paid overtime wages and were paid below the federal minimum wage while working at two of the defendant restaurants. Many of these employees worked 6 days a week, for over 40 hours each week, and at a flat weekly rate of payment. For example, all fry woks were paid a flat weekly rate even though they regularly worked more than 40 hours each week, tending to show that they were victims of common employment policies in violation of the section 207 of the FLSA. See Myers, 624 F.3d at 555. And it appears these commonalities are not limited to fry woks, as plaintiff has identified two waitresses, a dishwasher, a receptionist/cashier, and a packer who also worked 6 days a week for over 40 hours each week. It takes no great leap in logic to infer that defendants' alleged flat payment policy applied in equal measure to these employees as well.

---

[2] I.e., edited citation.

In addition, although plaintiff's affidavit only includes employment practices at two of the three restaurants, a uniform policy can be inferred where supervision and ownership are common and illegal practices are adequately alleged at some of the locations.  See Capsolas v. Pasta Resources, Inc., 10-cv-5595, 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011).  The plaintiffs in Capsolas identified an unlawful policy in only five of eight defendant restaurants.  Nevertheless, the court found that the "facts support[ed] a reasonable inference that there was a uniform policy across the eight restaurants, all of which share common ownership, are supervised by the same individuals, and are administered by the same company."  Id.; see, e.g., Karic v. Major Auto. Cos., 799 F. Supp. 2d 219, 226-27 (E.D.N.Y. 2011) (conditionally certifying a collective where plaintiffs worked at only six of nine defendant car dealerships).  Here, plaintiff's demonstration of uniform policies at two of the three restaurants likewise permits the Court to draw a reasonable inference of uniformity across all defendant-owned restaurants.  As in Capsolas, common ownership and management is not disputed, supporting the inference here as well.

Defendants also take issue with certifying employees as similarly situated when their job titles and duties are different.  However, employees need not have identical tasks and titles to be subject to the same illegal employment practices.  See Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 323 (S.D.N.Y.2011), rev'd on other grounds, 533 F. App'x 11 (2d Cir. 2013) ("The issue here is not whether Plaintiffs and other Loan Consultants were identical in all respects, but 'rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.'" (citing Vaughan v. Mortgage Source LLC, No. 08-cv-4737), 2010 WL 1528521, at *7 (E.D.N.Y. Apr. 14, 2010)).

Nor does plaintiff's affidavit lack enough specificity so as to disqualify it from supporting conditional certification, as defendants suggest. Specifically, defendants complain that plaintiff's affidavit does not provide complete information for each employee in the chart, including names and specific pay rates. Although it is true that "[m]otions for conditional certification have been denied where the only substantive allegations were nonspecific personal observations and conversations," see Reyes v. Nidaja, LLC, 14-cv-9812, 2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015) (citing Sanchez v. JMP Ventures, LLC, No. 13-cv-7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan 27, 2014)), those cases generally deal with far more deficient showings than in our case. For example, the court in Sanchez denied conditional certification because the plaintiff failed to "provide *any* detail as to a *single* such observation or conversation", leaving the Court "with a list of generalized allegations that have been molded into a declaration which reads similarly to the complaint." Id. (emphasis in both Reyes and Sanchez).

But plaintiff's observations in the instant case are far more detailed, identifying specific employees, their positions, the days (and in some cases hours) they worked, the fact that they were paid flat weekly rates, and the restaurant locations at which they worked. Moreover, plaintiff explains the manner in which he came by this information, namely, through conversations with Lao Da and the other employees with whom he shared a daily commute. The specificity that defendants demand – including the names of the employees – is not required at this stage of the certification. Indeed, at least one other court in this district has tentatively concluded that no case has "ever explicitly required plaintiffs to identify similarly situated employees by name to obtain conditional certification." Hernandez v. Immortal Rise, Inc., 11-cv-4360, 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012).

Plaintiff's affidavit therefore establishes, for the purposes of conditional certification, that the proposed opt-in plaintiffs are similarly situated to himself.

## II.     Equitable Tolling

In the event that the Court conditionally certifies this collective action – as it now has – plaintiff asks that it also toll the statute of limitations for potential opt-in plaintiffs for 90 days. Defendants object.

The doctrine of equitable tolling allows a court to extend a statute of limitations "on a case-by-case basis to prevent inequity." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000). "If the limitations period is not so tolled, opt-in plaintiffs would not be able to make claims for any period prior to three years from the date they actually file a consent to join the action." Knox v. John Varvatos Enters. Inc., 282 F. Supp. 3d 644, 657 (S.D.N.Y. 2017) (citing 29 U.S.C. § 255(a)).  However, "equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstances.'" A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011) (alterations omitted).  Indeed, the Supreme Court has made clear that conditions for applying equitable tolling are quite strict. See Knox, 282 F. Supp. 3d at 657.  To that end, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

Here, plaintiff does not argue that extraordinary circumstances have stood in the way of prospective plaintiffs joining the suit.  Rather, the reasons cited for the request are broad and applicable in most FLSA cases: "[U]nnecessary delays are of particular concern due to the FLSA's limitations period which continues to run until the potential class member opts in, giving rise to a need to identify and provide notice to potential class members promptly."  Nor does the

8

allegation that defendants failed to apprise employees of their rights constitute sufficient cause for tolling, as that would render the "extraordinary circumstance" requirement meaningless. See Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 279 (E.D.N.Y. 2015) ("[Failure to provide notice is an] insufficient basis for equitable tolling, as it would provide for equitable tolling whenever a defendant violated FLSA and NYLL by failing to post notices or provide statements of hours and wages"). Thus, there being no "rare" or "exceptional" basis to grant this request, plaintiff's motion for equitable tolling of the statute of limitations is denied.

### III. Production of Contact Information and Other Notice Items

To aid in providing notice to all potential members of the putative FLSA collective, plaintiff requests that defendants produce:

> a Microsoft Excel data file containing contact information ("including but not limited to last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, work location, dates of employment, and position") for all non-managerial employees who worked for defendants from January 9, 2017 to the present day.

Defendants do not object to the substance of this request,[3] but argue that (1) defendants should have 45 days to furnish plaintiff's counsel with this information; (2) the opt-in period should be limited to 60 days, rather than 90 days; and (3) the Notice of Pendency and Consent Form "should be limited to dissemination by first class mail."

Defendants shall have 21 days to provide the contact information. Although plaintiff requests an "expedited" schedule, he neither specifies the number of days he thinks would be appropriate for compliance nor identifies a reason for an expedited schedule – other than that

---

[3] Defendants do say that "in the event this Court grants Plaintiff's request for conditional certification, [they] object to all other proposed forms of relief stated within Plaintiff's motion," but this statement is so unhelpful that the Court construes it as a waiver of all objections not specifically lodged in the opposition brief.

9

"the statute of limitations is running against them on a daily basis" – to support a shorter period. Courts in this Circuit routinely grant 7 to 45 days for defendants to furnish prospective plaintiff information, and 21 days is reasonable for this case. Zamora v. L Plus L Productions LLC, 19-cv-1506, 2019 WL 5460559, at *6 (S.D.N.Y. Oct. 15, 2019) (14 days); Ballinger v. Adv. Magazine Publishers, Inc., 13-cv-4036, 2014 WL 7495092, at *8 (S.D.N.Y. Dec. 29, 2014) (30 days); Ritz v. Mike Rory Corp., 959 F. Supp. 2d 276, 278 (E.D.N.Y. 2013) (7 days); Cano v. Four M Food Corp., 08-CV-3005, 2009 WL 5710143, at *11 (E.D.N.Y. Feb. 3, 2009) (45 days).

As for the opt-in period, courts generally adopt a 90-day opt-in period only where the parties agree or if special circumstances require it. See Gui Zhen Zhu v. Matsu Corp, 424 F. Supp. 3d 253, 272 (D. Conn. 2020). Here, 90 days is appropriate in light of plaintiff's concerns that the potential opt-in plaintiffs may be delayed by foreign travel and because of the current COVID-19 public health crisis. This seems especially reasonable considering that defendants have noted on several occasions during this case their own difficulties in acting promptly as a result of COVID-19.[4]

And finally, defendants object to all forms of notice except first-class mail, and object in particular to the posting of notice at defendant restaurants. The proposed forms of direct communication with potential plaintiffs – including by mail, e-mail, text message, and direct social media channels such as WhatsApp and WeChat – are reasonable and minimally-invasive. Although the Court would normally hesitate to allow much more than first-class mail notices, the current public health crisis likewise favors more options. Posting on plaintiff's counsel's website and at the defendant restaurants is also appropriate. However, the Court disagrees with plaintiff

---

[4] Defendants made at least two such requests for extensions to respond because of difficulties due to COVID-19 restrictions. See Dkt. Nos. 22 and 24.

10

that a reminder notice should be permitted in this case, and is not inclined to allow a reminder absent good reason in light of the breadth of notice that it has permitted above.

Defendants do not substantively object to plaintiff's remaining procedural requests – that the Notice of Pendency may be disseminated in any relevant language, should exclude defendants' attorney's information, and should provide for a 3-year statute of limitations in light of the complaint's allegations of willfulness. These are all reasonable.

## CONCLUSION

Plaintiffs' [27] motion for conditional certification is granted and plaintiff's form of notice to prospective members of the collective is approved with the restrictions set forth above. Defendants shall provide the requested contact information within 21 days.

**SO ORDERED.**

                                                                     U.S.D.J.

Dated: Brooklyn, New York
       July 17, 2020