```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------   X
LING CHEN, on behalf of himself and others               :
similarly situated,                                      :
                                                         :
                              Plaintiff,                 :   MEMORANDUM DECISION
                                                         :   AND ORDER
              - against -                                :
                                                         :   19-cv-7313 (BMC)
ASIAN TERRACE RESTAURANT, INC. et al.,                   :
                                                         :
                              Defendants.                :
----------------------------------------------------------   X
```

**COGAN**, District Judge.

Plaintiff, a former cook at defendants' restaurants, obtained a default judgment against defendants for unpaid wages in this action brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and corresponding provisions of the New York State Labor Law ("NYLL") §§ 190 and 650 *et seq*. He moved "to correct a clerical mistake arising from an oversight or omission" in the judgment under Federal Rule of Civil Procedure 60(a). The alleged error that plaintiff raised was the failure to include a provision in the judgment pursuant to NYLL § 198(4) that in the event defendants failed to satisfy the judgment within 90 days, the judgment would increase by 15%. Having previously ruled that § 198(4) is inapplicable to federal judgments, see Quesada v. Hong Kong Kitchen, Inc., No. 20-cv-5639, 2021 WL 861800, at *2 (E.D.N.Y. March 8, 2021), the Court summarily denied that motion by docket entry, citing to Quesada.

Plaintiff has moved for reconsideration, advising the Court that other judges in this district disagree. They do not, but even if they did, the Court would adhere to its decision in Quesada.

Section 198(4) of the New York Labor Law provides that:

> Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of the judgment shall automatically increase by fifteen percent.

However, Congress has spoken as to the amount by which a federal court judgment may be increased for non-payment, and there is nothing in the Federal Rules of Civil Procedure that makes state law applicable to this question.

Although there is no case directly on point, the Second Circuit's decision in Cappiello v. ICD Publications, Inc., 720 F.3d 109 (2d Cir. 2013), and its predecessors strongly suggest this conclusion. In Cappiello, the plaintiff argued that the district court should have applied N.Y. C.P.L.R. 5004, which provides a 9% interest rate, to calculate post-judgment interest. The Second Circuit disagreed, noting that Congress, in 28 U.S.C. § 1961, had set a uniform rate of post-judgment increases for all federal judgments, a rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Even though the New York rate was much higher, federal law controlled how a federal judgment should be treated once it was entered. The Court noted that § 1961 applies "to *any* money judgment in a civil case recovered in district court." Id. at 113 (emphasis in original) (quoting 28 U.S.C. § 1961). It held that the statute "makes no exception for judgments rendered in diversity actions . . . ." Id. This was based on the principle that "where a valid federal statute applies, 'we do not wade into Erie's murky waters.'" Id. (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010)).

Cappiello is consistent with other Second Circuit cases as well as cases from other Circuit Courts of Appeals. For example, the Eleventh Circuit observed that prior to 1982, § 1961 had

2

provided that post-judgment interest "shall be calculated . . . at the rate allowed by State law." EEOC v. Guardian Pools, Inc., 828 F.2d 1507, 1513 n.4 (11th Cir. 1987) (quoting 28 U.S.C. § 1961 (former)). With the amendment of the statute, however, state law had no impact on the question of how much a federal judgment would increase after its entry. See also FCS Advisors, Inc. v. Fair Finance Company, Inc., 605 F.3d 144 (2d Cir. 2010) (per curiam) (rejecting New York calculation on post-judgment interest in a contract case despite New York choice of law provision in the contract); Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004) (federal post-judgment interest rate applies even in diversity cases); Schipani v. McLeod, 541 F.3d 158, 164-65 (2d Cir. 2008) ("[i]n a diversity case, state law governs the award of prejudgment interest" but "[i]n contrast, postjudgment interest is governed by federal statute").

I recognize that these cases raise a more straightforward issue than that presented here – § 1961 and C.P.L.R. § 5004 both expressly address post-judgment interest, and so it is easier to see why federal law would control. In contrast, NYLL § 198(4), which, like interest, increases the outstanding judgment on a percentage basis (15%), has as its likely purpose the imposition of a penalty to incentivize judgment debtors in wage cases to satisfy outstanding judgments. Nevertheless, for several reasons, I conclude that § 1961 supplants any state law provisions that would otherwise increase the amount of a federal judgment.

First, as Guardian Pools notes, Congress had previously deferred to state law to supply the post-judgment interest rate under § 1961. When it amended the statute in 1982 to replace state law with the federal Treasury bond rate as the benchmark for all federal judgments, it legislated in favor of uniformity by eliminating all references to state law as affecting post-judgment increases in the judgment. Second, the Federal Rules of Civil Procedure already adopt state law procedures for the enforcement of a federal judgment. But that adoption is limited to

the procedures for execution of the judgment, not determination of whether or by how much the judgment increases. See Fed. R. Civ. P. 69(a). That makes two instances where Congress considered the extent to which state law should be applicable in the post-judgment context, and neither includes judgment-increasing provisions like NYLL § 198(4).

Plaintiff contends that NYLL § 198(4) controls because "the damages here were all awarded under state law." This acknowledgment is somewhat ironic as the basis for the Court's jurisdiction in this case was the FLSA. The argument illustrates the concern previously expressed by this Court, see Escalante v. Lonestar Sports Bar & Grill, Inc., No. 21-cv-3900, 2021 WL 5084063, at *1 n.2 (E.D.N.Y. Nov. 2, 2021), that the FLSA has become all but meaningless in New York wage cases, cases with which the federal courts in New York are flooded. This evolution of the FLSA to the point of irrelevance has occurred because the NYLL is so far superior in protecting workers as compared to the FLSA that the NYLL substantially dominates – indeed, eliminates – any function of the FLSA except as a jurisdictional hook. This jurisdictional hook effectively transforms the New York federal courts into state courts charged with enforcing the NYLL.

Putting that concern aside, however, plaintiff is correct that, as is almost always the case in New York wage cases, the judgment here is based on violations of NYLL, not the FLSA. Nevertheless, the law that led to the entry of the judgment is immaterial.

As noted above, 28 U.S.C. § 1961, not C.P.L.R. § 5004, applies to federal judgments even in diversity cases. See Cappiello, 720 F.3d at 113. More importantly, under the doctrine of merger, the substantive law that determined the case no longer applies once judgment is entered except as expressly provided by federal law. The Restatement of Judgments (Second) § 18 states the principle: "When the plaintiff recovers a valid and final personal judgment, his original claim

is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment." The principle is widely recognized in the courts, including the Second Circuit. See FCS Advisors, 605 F.3d at 148 (citing Soc'y of Lloyd's v. Reinhart, 402 F.3d 982, 1004 (10th Cir. 2005) ("[W]hen a valid and final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it. In such a case, the original claim loses its character and identity and is merged in the judgment.") (internal quotation marks omitted)); Kotsopoulos v. Asturia Shipping Co., 467 F.2d 91, 95 (2d Cir. 1972) ("Once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises.").

The fact that under NYLL § 198(4), an increased percentage of the judgment is intended to induce payment does not change this. The Second Circuit has noted that even when a tribunal determines to increase judgment payment incentives by increasing the post-judgment interest rate, § 1961 overrides that determination. In Carte Blanche (Singapore) Ltd. v. Carte Blanche International, Ltd., 888 F.2d 260 (2d Cir. 1989), an arbitration panel awarded interest accruing at various points in the arbitral process, including raising post-judgment interest to 10%, "because the interest payments specified in the arbitral award under review were designed to provide [the parties] with incentives to comply with their respective obligations." The Court rejected that portion of the arbitration award, finding that creating payment incentives did not displace § 1961:

> [Plaintiff] argues that the arbitrators' interest award was carefully crafted to provide incentives for the parties to comply with the complex injunctive aspects of the award, and that failure to enforce arbitral interest awards would lead to forum shopping for the enforcement of arbitral awards among jurisdictions with different rules concerning post-judgment interest. These arguments challenge the wisdom of the inflexible, unitary rule provided by section 1961(a) regarding post-

5

>judgment interest on money judgments awarded by federal district courts. Accordingly, they should be addressed to Congress, not this court.

Id. at 269-70. I do not see a meaningful distinction between an arbitral panel's ruling to increase the federal interest rate to 10% on a federal judgment for a collection-incentivizing reason and a state statute providing for an increase by 15% for the same reason.

Finally, the district court cases upon which plaintiff relies, although applying NYLL § 198(4), never considered the question of whether the statute is applicable to federal judgments in the first place. See Jacome v. Optical 49, Inc., No. 20-cv-02615, 2021 WL 3375134, at *13 (E.D.N.Y. July 9, 2021), report and recommendation adopted, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021); Rodriguez v. Solares Corp., No. 16-cv-3922, 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), report and recommendation adopted, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019); accord, Jacome v. Optical 49, Inc., No. 20-cv-2615, 2021 WL 3375134, at *15 (E.D.N.Y. July 9, 2021), report and recommendation adopted, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021); Casarrubias v. Surf Ave. Wine & Liquor Inc., No. 20-cv-3003, 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021); Gonzalez-Dias v. Daddyo's Management Group Inc., No. 16-cv-1907, 2017 WL 7625319, at *4 (E.D.N.Y. Nov. 11, 2007). An assumption is not persuasive.

Special state legislation like NYLL § 198(4) is not a sufficient reason to depart from the "inflexible, unitary rule", see Carte Blanche, 888 F.2d at 270, by which post-judgment accruals are applied to all federal judgments. In addition, plaintiff could have commenced this action in state court solely under the New York Labor Law, obtained a state court judgment that would have applied § 198(4), and lost nothing.[1] Having instead chosen to proceed in federal court and

---

[1] Even now, plaintiff could docket this Court's judgment in state court, where it would have "the same effect as a judgment entered in the Supreme Court within the County." N.Y. C.P.L.R. 5018(b). See Hartman v. Morganstern, 28 A.D.3d 423, 425, 814 N.Y.S.2d 169, 171 (2nd Dep't 2006) ("[T]here is no case law or statute requiring a New

6

to obtain a federal judgment, he should be in no better position than other judgment creditor with judgment obtained from a federal court sitting in New York. His motion for reconsideration is therefore denied.[2]

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
         May 6, 2022

---

York State court to apply the Federal interest rate as opposed to the higher New York State interest rate" when a federal judgment is docketed in state court under C.P.L.R. 5018(b)).

[2] In addition, plaintiff's motion does not involve a "clerical mistake" or "oversight or omission" as defined by Fed. R. Civ. P. Rule 60(a). "When the change sought is substantive in nature, such as a change in the calculation of interest not originally intended, the addition of an amount to a judgment to compensate for depreciation in stock awarded, or the broadening of a summary-judgment motion to dismiss all claims, relief is not appropriate under Rule 60(a)." Charles Alan Wright *et al*., 11 Fed. Prac. & Proc. Civ. § 2854 (3rd Ed. April 2022 update).

Since the motion does not fall under Rule 60(a), it is untimely under Rule 60(b), as plaintiff moved to amend the judgment some 15 months after it was entered.